UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>  Defendant. | CASE NO. C16-0755JLR<br><br>ORDER GRANTING MOTION TO STAY |

## I. INTRODUCTION

Before the court is Defendant Certain Underwriters at Lloyd's, London's ("Underwriters") motion to stay the current proceedings pending the resolution of an underlying state court action involving the parties' insureds. (Mot. (Dkt. # 26).) The court has considered Underwriters' motion, Plaintiff Evanston Insurance Company's ("Evanston") opposition to the motion (Resp. (Dkt. # 30)), Underwriters' reply (Reply

(Dkt. # 34)), the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS Underwriters' motion to stay for the reasons discussed below.

## II. BACKGROUND[2]

Evanston brings the present action to recover from Underwriters a portion of the costs Evanston allegedly incurred between January 1, 2014, and January 21, 2016, to defend a mutual insured and several of Underwriters' insureds in Washington State.  (*See* Compl. (Dkt. # 1) ¶¶ 63-84.)  From October 26, 2011, to April 1, 2013, Evanston and Underwriters both insured Scott Clarke, who allegedly owns, operates, and controls a group of companies collectively referred to as the "Clarke Group."  (*Id*. ¶¶ 4, 12-14, 24-25, 27-28.)  In addition to insuring Mr. Clarke, Evanston also insured Clartre, Inc. ("Clartre").  (*Id*. ¶ 3.)  Underwriters insured the following Clarke Group entities:  Blue Mountain Log Sales, Ltd. ("Blue Mountain"), Green River Log Sales Ltd. ("Green River"), The Clarke Group Shake Division, Inc. ("Shake Division"), and Gold Band Shake and Shingle Ltd. ("Gold Band").  (Gilkes Decl. (Dkt. # 10) ¶ 5, Ex. A at 113, 116, 131, 134, 183.)

In 2013, Mr. Clarke, Clartre, and Blue Mountain were named as defendants in separate Washington State Superior Court and federal district court actions.  (Compl.

---

[1] No party has requested oral argument, and the court deems it unnecessary to the disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court previously provided a detailed recitation of the factual allegations.  (10/31/16 Order (Dkt. # 23).)  Here, the court recites only the facts and allegations relevant to Underwriters' motion to stay.

¶ 30-41.) In 2014, the various actions were consolidated into a single proceeding in Whatcom County Superior Court (the "underlying action"). (Scheer Decl. (Dkt. # 9) ¶ 5.) In April 2015, Gold Band and Shake Division were added as defendants in the underlying action. (Compl. ¶ 42.) Green River was also a defendant in the underlying action. (*Id.* ¶ 44.)

Evanston agreed to defend its insureds, Mr. Clarke and Clartre, beginning January 1, 2014. (*Id.* ¶ 58.) However, Evanston reserved the right to withdraw its defense if a court determined that Mr. Clarke's and Clartre's insurance policies did not cover the claims brought against Mr. Clarke and Clartre. (*Id.* ¶¶ 48-49, 56-57.) Evanston then filed a declaratory judgment action against its insureds in federal district court for the Western District of Washington. *See Evanston Ins. Co. v. Clartre, Inc.*, 158 F. Supp. 3d 1110 (W.D. Wash. 2016). On January 21, 2016, the court held that Evanston had no duty to defend the underlying action. *Id.* at 1123.

Mr. Clarke and Blue Mountain also tendered their defense of the underlying actions to Underwriters. (Gilkes Decl. ¶ 5, Ex. A at 203-16.) Underwriters responded to Mr. Clarke and Blue Mountain with a reservation of rights letter dated June 12, 2014. (Scheer Decl. ¶ 6, Ex. 1.) In that letter, Underwriters acknowledges, subject to a reservation of rights, its duty to defend Mr. Clarke and Blue Mountain with respect to three of eight counterclaims brought against those insureds in Washington State.[3] (*Id.* at

---

[3] Although Underwriters' June 12, 2014, reservation of rights letter acknowledges a duty to defend Mr. Clarke and Blue Mountain, Evanston does not allege that Gold Band, Shake Division, or Green Log—Clarke Group entities added as defendants to the underlying action in 2015—also tendered their defenses to Underwriters. (*See generally* Compl.) It is

3.) Underwriters found the five remaining counterclaims outside the policies' scope of coverage. (*Id.* at 3, 9-11.) After learning of this tender, Evanston requested that Underwriters contribute to the defense costs it was incurring. (Mintzer Decl. (Dkt. # 13) ¶ 5.) Underwriters initially declined to contribute, claiming it did not insure the same risk as Evanston. (*Id.* ¶¶ 6, 8, Exs. A-C.) When the district court found Evanston did not have a duty to defend, however, Underwriters began paying the defense costs of the underlying action. (Answer (Dkt. # 24) ¶¶ 55 ("Underwriters' defense cost incepted concurrent upon Evanston being relieved of its obligation to defend."), 72 (same), 82 (same)). Underwriters is currently defending the insureds under a reservation of rights. (Bergh Decl. (Dkt. # 27) ¶ 2.)

Evanston alleges that a single law firm defended Mr. Clarke, Clartre, Blue Mountain, and other Clarke Group entities in the underlying action. (Compl. ¶ 58.) Evanston states that "because the Clarke Group was jointly defended" in the underlying action, the "defense costs attributable to Mr. [Clarke] and Clartre could not be segregated." (Mintzer Decl. ¶ 4.) Thus, Evanston alleges that it funded the defense costs for all of its and Underwriters' insureds from January 2014 until January 2016. (Compl. ¶ 58.) Evanston, therefore, asserts three claims. First, Evanston seeks equitable contribution from Underwriters for portions of the expenses it allegedly incurred to defend Mr. Clarke, Blue Mountain, and other Underwriters-insured entities that were added as defendants in the underlying actions after Evanston had begun covering the

---

thus unclear from the record whether Underwriters also acknowledged a duty to defend those Clarke Group entities.

defense expenses of Mr. Clarke and Clartre.  (*Id*. ¶¶ 63-84.)  Second, Evanston requests a finding that Underwriters has been unjustly enriched by its refusal to contribute to the defense of Mr. Clarke, Blue Mountain, and their other insureds.  (*Id*. ¶¶ 74-78.)  Third, Evanston seeks a declaration that Underwriters owes Evanston an equitable share of the costs Evanston allegedly incurred to defend their mutual and non-mutual insureds in the underlying actions.  (*Id*. ¶¶ 79-84.)

A discovery dispute is also relevant to the stay motion.  Following a discussion between Evanston and Underwriters regarding an exchange of documents in the current proceeding, Evanston advised the Clarke Group, through counsel, of Evanston's intent to provide claim documents to Underwriters.  (Landreth Decl. (Dkt. # 31) ¶ 4.)  In response, Mr. Clarke sent a letter to the court and counsel, objecting to the production of documents in Evanston's possession from the Clarke Group's defense counsel.  (Clarke Letter (Dkt. # 25).)  In the letter, Mr. Clarke expressed concern about providing confidential information to Underwriters, which is "defending [him] with reservations and limitations."  (*Id*. at 1.)  Additionally, Mr. Clarke feared that opposing counsel in the underlying action might receive such confidential material, stating that it "may be damaging to [his] defense in that case."  (*Id*. at 2.)  Based on this letter, "Evanston has not produced to Underwriters documents detailing the defense of the Clarke Group in the underlying litigation."  (Landreth Decl. ¶ 6.)

Underwriters requests that the court stay these proceedings pending the outcome of the underlying lawsuit against the insureds.  (*See generally* Mot.)  Underwriters argues that it will face hardship moving forward without the documents from the Clarke defense

and that production of those documents would prejudice their insureds. (*Id*. at 7.) In its opposition, Evanston proposes that the court allow the parties to litigate Evanston's third claim for a declaratory judgment of a right to contribution, and then, if needed, stay the proceedings on the other two claims. (Resp. at 5.) Evanston argues that the declaratory judgment claim could be resolved without the documents from the Clarke defense because it is a legal question as to whether Underwriters had a legal obligation to defend. (*Id*.) The court now addresses Underwriters' motion.

### III. ANALYSIS

**A. The Court's Authority to Issue a Stay**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936). "The exertion of this power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 255, for the same proposition). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The issues involved in the pending proceedings need not be "controlling of the action before the court" for the court to issue a stay. *Id.* at 864.

## B. The Factors the Court Considers

In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer*, 398 F.3d at 1110 (citing *CMAX*, 300 F.2d at 268). Those interests include: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. Here, the court finds that these factors weigh in favor of granting Underwriters' motion to stay the current proceedings.

### 1. Possible Damage Resulting from a Stay

The court first considers any damage that may result to Evanston if the court imposes a stay. *See Lockyer*, 389 F.3d at 1110. On this point, Evanston states that "staying litigation for an indeterminate period of time harms Evanston's interest in finally determining and resolving its right to contribution from Underwriters." (Resp. at 6.) Evanston concedes, however, that "a stay would be appropriate" for two of its claims because it is currently unable to produce the documents necessary to prove the amount by which Underwriters were unjustly enriched or would be required to contribute. (*Id*. at 5; *see also* Clarke Letter.) Evanston also acknowledges that it is no longer defending the insureds in the underlying action, and thus it is not incurring further defense costs. (Compl. ¶ 61); *Evanston*, 158 F. Supp. 3d at 1123. In light of Evanston's concession and the fact that it is not incurring damage by defending the underlying suit, the court finds

that any damage to Evanston caused by a delay in the court's resolution of this case would be minimal.[4]

    2. <u>Possible Hardship or Inequity Resulting from Going Forward</u>

The court next considers any hardship or inequity that might result to Underwriters from going forward. *See Lockyer*, 398 F.3d at 1110. Absent a stay, the hardship or inequity to Underwriters is unavoidable.[5] Without access to the defense cost invoicing and other documents in the Evanston case file, Underwriters will be unable to "assess and rebut [Evanston's] claim." (Mot. at 7.) However, if Evanston produces the files, there is a risk of prejudice to the insureds in the underlying action. (*See* Clarke Letter at 2 ("The opposing attorneys in the [underlying action] have demonstrated that they closely follow this matter . . . If [Evanston] start[s] filing invoices or notes from my attorneys that show some strategy, I guarantee the opposing attorneys will read it.")); *McCollough v. Minn. Lawyers Mut. Ins. Co.*, No. CV-09-95-BLG-RFC-CSO, 2010 WL 441533, at *5 (D. Mont. Feb. 3, 2010) (finding inequity where the disclosure of work product information could unfairly prejudice the insured in the underlying case); *Fed. Ins. Co. v. Holmes Weddle & Barcott PC*, No. C13-0926JLR, 2014 WL 358419, at *4 (W.D. Wash. Jan. 31, 2014) (discussing the notion that an insurer should not give indirect or even unintentional

//

---

[4] If relevant circumstances change, Evanston can seek to lift the stay. *See Boyle v. Cty. of Kern*, No. 103-CV-05162-OWW-GSA, 2008 WL 220413, at *5 (E.D. Cal. Jan. 25, 2008) (The "corollary to [the power to stay proceedings] is the ability to lift a stay previously imposed.").

[5] Underwriters does not argue that it would face hardship or inequity if the right to contribution issue proceeds and the court stays the other issues in the case. (*See generally* Mot.; Reply) The third factor in the stay analysis, however, weighs against bifurcating the issues in that manner. *See infra* § III.B.3.

assistance to the insured's opposing party). Only after the underlying action concludes will Underwriters be able to fully defend the present case without the risk of prejudicing its insureds. The court finds this factor weighs in favor of staying the case.

        3.   <u>The Orderly Course of Justice</u>

Finally, the court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay." *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55). This factor also weighs in favor of granting the motion to stay. Evanston has recognized that a stay "may be appropriate" at some point in the current proceedings in order to properly determine how much Underwriters owes, if anything. (Resp. at 5.) Thus, Evanston has acknowledged that there are issues of proof that would necessitate a stay. Additionally, the piecemeal litigation requested by Evanston could result in a waste of judicial resources if, at the end, it still cannot prove the amount that Underwriters owes. *HOD Carriers & Gen. Laborers Union Local 242 v. 3 Kings Envtl. Inc.*, No. C09-1759JLR, 2010 WL 2643367, at *3 (W.D. Wash. June 29, 2010) ("The court should avoid piecemeal litigation of any claim."). In order to ensure that both parties have the necessary evidence and avoid the possibility of wasting judicial resources, the court finds this factor weighs in favor of staying the current proceedings.

**C.**    **Summary of the Factors**

The court's evaluation of the relevant factors weighs in favor of imposing a stay. Accordingly, the court stays the current proceedings. Absent a motion to lift the stay, the stay will remain in place so long as the underlying proceedings continue.

1 │       The court orders the parties to file a joint status report every ninety (90) days until the court lifts the stay. The status report shall inform the court of the status of the underlying action, the expected timeline for resolution of this matter, and any other developments affecting resolution of this matter. If this matter is resolved or there is any other significant change in the status of the underlying action any time during any 90-day interval, the court orders counsel to file a status report informing the court of the development no more than five (5) days after that event occurs.

### IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS Underwriters' motion to stay (Dkt. # 30) and STAYS the case. The court also ORDERS the parties to file periodic joint status reports as detailed herein.

Dated this 4th day of May, 2017.

JAMES L. ROBART
United States District Judge